IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BLAINE McGILL                                                      PLAINTIFF

v.                                                    CAUSE NO. 1:18CV159-LG-RHW

BP EXPLORATION & PRODUCTION
INC. and BP AMERICA
PRODUCTION COMPANY                                              DEFENDANTS

### AMENDED MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF DR. STEVEN STOGNER AND MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF CAUSATION

**BEFORE THE COURT** are the [66] Motion to Exclude the Testimony and Opinions of Dr. Steven Stogner and the [68] Motion for Summary Judgment based on Lack of Causation filed by BP American Production Company and BP Exploration & Production Inc. (hereafter collectively referred to as "BP"). The parties have fully briefed the Motions. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that BP's Motion to Exclude and Motion for Summary Judgment should be granted.

### BACKGROUND

From approximately May 12, 2010 to July 30, 2010, the plaintiff, Blaine McGill, was employed by Miller Fishing Company to clean up oil released in the Gulf of Mexico as a result of the *Deepwater Horizon* explosion. McGill was part of a boat crew that searched the Gulf for oil slicks. Upon locating an oil slick, members of the boat crew would use an oil boom to contain the oil before scooping the oil into garbage bags kept in the boat. As a result of his work related to the spill, McGill is

a member of the class covered by the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement ("MSA"). Class members like McGill who did not opt out of the MSA agreed not to sue BP for medical conditions caused by the oil spill in return for defined compensation benefits. However, the MSA permits class members to sue BP for "Later-Manifested Physical Conditions." Lawsuits filed for "Later-Manifested Physical Conditions" are called "Back-End Litigation Option" or "BELO" lawsuits.

In 2013, McGill was diagnosed with numerous illnesses, including pneumonia and acute respiratory failure. He followed the procedures set forth in the MSA for filing this BELO lawsuit against BP. Pursuant to the MSA, McGill is not required to demonstrate that he was exposed to "oil, other hydrocarbons, and other substances released from the MC252 WELL and/or *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES." (Pl.'s Resp. Ex. 1, at 68, ECF No. 83-1.) In addition, McGill is not required to demonstrate that BP was at fault for the *Deepwater Horizon* incident. (*See id.*) Nevertheless, the parties may litigate "the level and duration of [McGill's] exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof." (*See id.* at 67.) The parties may also litigate whether McGill's later-manifested physical condition was legally caused by his exposure to the oil, dispersants, and other chemicals. (*See id.*)

McGill has designated Dr. Steven Stogner as an expert in the field of pulmonology. In his report, Dr. Stogner opined that McGill's exposure to the dispersant Corexit during oil clean-up work more probably than not caused or contributed to McGill's pulmonary dysfunction and diseases. During his deposition, Dr. Stogner also opined that McGill's exposure to crude oil cannot be ruled out as a cause of or contributing factor to McGill's illnesses. BP has filed a Motion for Summary Judgment, a Motion to Exclude Dr. Stogner's testimony and opinions, and numerous other motions.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

The parties agreed that the MSA "shall be interpreted in accordance with General Maritime Law." (Pl.'s Resp. Ex. 1, at 192, ECF No. 83-1.) Under general

maritime law, "a party's negligence is actionable only if it is a 'legal cause' of the plaintiff's injuries." *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992). "[L]egal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." *Id.* (citation and internal quotation marks omitted). "The term 'substantial factor' means more than 'but for the negligence, the harm would not have resulted.'" *Id.* (citation and internal quotation marks omitted).

BP argues that toxic tort law also governs whether McGill's medical conditions were caused by dispersants and/or oil. The Fifth Circuit has held that "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999). Expert testimony is required, because "[a] plaintiff in such a case cannot expect lay fact-finders to understand medical causation[.]" *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, (5th Cir. 2009) (citing *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).

"[T]here is a two-step process in examining the admissibility of causation evidence in toxic tort cases." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). The court must first determine whether there has been a showing of general causation, which "is whether a substance is capable of causing a particular injury or condition in the general population . . . ." *Id.* (quotation omitted). If the court "concludes that there is admissible general-causation

evidence, [it] must determine whether there is admissible specific-causation evidence." *Id.* (citation omitted). "[S]pecific causation is whether a substance caused a particular individual's injury." *Id.*

BP argues that McGill cannot establish causation as required by the MSA and general maritime law, because expert testimony is required in toxic tort cases. In addition, BP asserts, the expert testimony must establish that McGill's exposure to dispersants and/or oil was at a sufficient level and duration to cause his medical conditions. McGill counters that BP's arguments based on toxic tort law are precluded by the application of general maritime law.

The Fifth Circuit has previously applied toxic tort causation standards to claims filed under the Jones Act and general maritime law. *See Seaman*, 326 F. App'x at 723-24. District courts considering other BP BELO cases have also applied toxic tort law. *See, e.g., Brown v. BP Expl. & Prod. Inc.*, No. 18-9927, 2019 WL 2995869, at *2-3 (E.D. La. July 9, 2019); *Harriel v. BP Expl. & Prod. Inc.*, No. 2:17cv197-KS-MTP, 2019 WL 2574118, at *3 (S.D. Miss. May 15, 2019); *Banegas v. BP Expl. & Prod. Inc.*, No. 17-7429, 2019 WL 424683, at *2 (E.D. La. Feb. 4, 2019); *Legros v. BP Amer. Prod. Co.*, No. 16-30050, 2018 WL 4853713, at *2-3 (E.D. La. Oct. 5, 2018). A lay jury will inevitably have just as much difficulty determining the extent of exposure to a chemical that is necessary to cause harm in maritime cases as in non-maritime cases. Therefore, no justification exists for permitting a jury to make such scientific calculations in a maritime case.

McGill also argues that the Court should reject BP's arguments because the MSA provides that he is not required to prove the fact of exposure. However, the MSA does not prevent the parties from litigating *the level and duration* of exposure." (Pl.'s Resp. Ex. 1, at 67, ECF No. 83-1.) The MSA also does not relieve McGill of his burden of demonstrating that his exposure caused his illnesses. (*Id.*) Therefore, BP's arguments do not violate the terms of the MSA.

In an effort to demonstrate causation, McGill primarily relies on the opinions of Dr. Stogner, but Dr. Stogner's testimony and opinions are the subject of a *Daubert* motion filed by BP. "A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)). "Ultimately, the trial court must also find an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

As explained previously, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Curtis*, 174 F.3d at 670.  Dr. Stogner's opinions do not meet this minimum standard.   Dr. Stogner relies on the Material Safety Data Sheets (MSDS) for Corexit EC9500 and Corexit EC9527A, which provide that repeated and prolonged inhalation of Corexit may irritate the respiratory tract.  He also cited several studies as well as the temporal proximity between McGill's exposure and development of symptoms.  During his deposition, Dr. Stogner also opined that McGill's exposure to crude oil cannot be ruled out as a cause of or contributing factor to McGill's illnesses.

Dr. Stogner does not know the extent of McGill's exposure to Corexit or oil. (Def.'s Mot. Ex. G, at 42, ECF No. 66-7.)   He does not know the number of days or hours McGill spent removing oil from the water.  (*Id*. at 20, 22.)  He is uncertain whether McGill's exposure was through inhalation or skin contact, but he believes it was more likely than not aspiration.  (Def.'s Mot. Ex. E, at 94-95, ECF No. 66-5.) He does not know whether Corexit can be inhaled after it has been applied to water. (Def.'s Mot. Ex. G, at 41, ECF No. 66-7.)   He does not know the effect that seawater may have on oil.  (*Id*. at 93.)  He does not have an opinion regarding the specific level of exposure to Corexit that would cause toxicological effects in humans.  (Def.'s Mot. Ex. E, at 96, ECF No. 66-5.)  He merely assumes that McGill's illnesses were caused by Corexit and/or oil exposure because McGill first developed symptoms

after completing his clean-up duties. (*Id.* at 76-77.) He reviewed several studies, but he admitted that he concluded that McGill's illnesses must have had an occupational cause before reviewing the studies. (*Id.* at 85.) None of the studies Dr. Stogner cites provide the level of oil or Corexit exposure that would cause harm to humans. (*Id.* at 90.) Since Dr. Stogner's opinions are based on speculation and insufficient facts and data, his opinions and testimony must be excluded as unreliable, and BP's *Daubert* Motion must be granted. *See Moore*, 151 F.3d at 278-79 (finding that an expert's reliance on temporal proximity, speculation, and MSDS data sheets was insufficient to meet *Daubert*'s standards).

McGill also relies on testimony and opinions of two treating physicians — Dr. Frederick Pakron and Dr. Shawn Nishi — in an effort to establish causation. Dr. Pakron testified during his deposition that he was solely focused on treating McGill's asthma, and he was not concerned with determining what may have caused McGill's asthma. (Def.'s Mot. Ex. E, at 43, ECF No. 68-5.) Dr. Pakron therefore knew "very little" about McGill's oil spill work or exposure to chemicals. (*Id.* at 40-41.) Dr. Nishi does not have an opinion regarding the cause of McGill's medical conditions. (Def.'s Mot. Ex. F, at 11, ECF No. 68-6.) Therefore, neither Dr. Pakron nor Dr. Nishi can assist McGill in establishing causation.

In the absence of admissible expert testimony regarding the harmful level of exposure to Corexit and/or oil, plus knowledge that McGill was exposed to such quantities, McGill cannot establish that his exposure to these chemicals caused his

medical conditions.  BP is entitled to summary judgment, and McGill's lawsuit must be dismissed with prejudice.

## CONCLUSION

McGill has not demonstrated that the proposed expert opinions and testimony of Dr. Stogner are reliable and admissible; thus, Dr. Stogner's opinions and testimony must be excluded.  McGill also has not provided admissible evidence supporting his claim that his exposure to oil and/or Corexit caused his medical conditions.  BP is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [66] Motion to Exclude the Testimony and Opinions of Dr. Steven Stogner is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the [68] Motion for Summary Judgment based on Lack of Causation filed by BP American Production Company and BP Exploration & Production Inc. is **GRANTED**.  The Court will enter a separate judgment pursuant to Fed. R. Civ. P. 58.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that all other pending motions are **TERMINATED**.

**SO ORDERED AND ADJUDGED** this the 15th day of November, 2019.

s/ *Louis Guirola, Jr.*
Louis Guirola, Jr.
United States District Judge